1

2

3

4

5

6

7                   UNITED STATES DISTRICT COURT

8                  EASTERN DISTRICT OF CALIFORNIA

9

                        ----oo0oo----

10

11   FREDDY ARIAS,
                                    NO. CIV. 2:09-690 WBS GGH
12          Plaintiff,

13      v.                          MEMORANDUM AND ORDER RE:
                                    MOTION FOR SUMMARY JUDGMENT
14   JOHN MCHUGH, SECRETARY OF THE
     ARMY,
15
            Defendant.
16   _____/

17
                        ----oo0oo----
18

19          Plaintiff Freddy Arias brought this action against John

20   McHugh in his official capacity as Secretary of the Army[1] for

21   damages and cost recovery pursuant to the Americans With

22   Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-83, and Title VII of

23   the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17

24   (2006).  Defendant John McHugh, Secretary of the Army, now moves

25   _____

26          [1]   Plaintiff's First Amended Complaint ("FAC") complains
     against Pete Geren, who was Secretary of the Army when plaintiff
     originally filed his complaint.  On September 21, 2009, John
27   McHugh was confirmed as Secretary of the Army.  Pursuant to Rule
     25(d) of the Federal Rules of Civil Procedure, John McHugh is
28   substituted for Pete Geren as the defendant in this suit.

for summary judgment on plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of Procedure 56 on the basis that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law.

I.   <u>Factual and Procedural Background</u>

Plaintiff is was at all relevant times a lawfully admitted permanent U.S. resident, and was hired by the U.S. Department of the Army on October 7, 2002, through the Student Temporary Employment Program ("STEP")[2] as an office clerk at Pine Flat Lake.  (<u>See</u> Pl.'s Response to Def.'s Statement of Undisputed Facts (Docket Nos. 67-68) ¶¶ 11, 14; Amended Taylor Decl. (Docket No. 65) Ex. 1.)  In January of 2003, plaintiff changed positions to become a student park ranger at Pine Flat Lake (Pl.'s Response to Def.'s Statement of Undisputed Facts ¶ 15; Amended Taylor Decl. Ex. 2.)  Plaintiff eventually worked through the Student Career Experience Program ("SCEP").  (Amended Taylor Decl. Ex. 7.)[3]  Students in either STEP or SCEP programs can be non-citizens, provided they are a lawfully admitted permanent resident or otherwise authorized to be employed.  5 C.F.R. §

---

[2]   The STEP program for students provides for temporary hires in the excepted service of one year or less and does not confer eligibility to be promoted or noncompetitively converted to term, career-conditional, or career positions.  (Pl.'s Ex. in Supp. of Opp'n to MSJ Ex. 1-2.); <u>see</u> 5 C.F.R. § 213.3202(a)(10).  Students may be noncompetitively converted to the SCEP program whenever they meet that program's requirements and a suitable position is available.  5 C.F.R. § 213.3202(a)(15).

[3]   Students in the SCEP program who have met all of its requirements may be noncompetitively converted to a career or career conditional appointment at any time within 120 days of satisfactory completion of their degree program.  <u>Id.</u> § 213.3202(b)(10).  Students in the SCEP program, however, must obtain U.S. citizenship before they can be converted.  <u>Id.</u> § 213.3202(b)(6)(ii), (b)(11)(i).

1  213.3202(a)(6), (b)(6).  SCEP students must obtain U.S.
2  citizenship, however, before they are eligible to be
3  noncompetitively converted to a term, career, or career
4  conditional appointment.  Id. § 213.3202(b)(6)(ii).

5       In 2006 Ken Manning, the security officer for the
6  Sacramento District of the Army Corps of Engineers, discovered
7  three non-citizen contractors in the Sacramento District with
8  access to Department of Defense occupied buildings and computer
9  systems in violation of their contracts.  (Amended Taylor Decl.
10 Ex. 53 (Manning Depo.) 16-17.)  In response, Manning set out to
11 determine if there were any other non-U.S. citizens working in
12 the Sacramento District who were not complying with security
13 protocol.  (Id. at 15-17.)  Manning sent an e-mail request to
14 front-line supervisors in the District requesting them to
15 identify anyone who was not a United States citizen working in
16 their area.  (Id. at 16.)  Manning received e-mails in response
17 that revealed four additional non-citizens, all of whom were
18 employed under student-excepted appointments and were not
19 complying with governing security regulations for non-citizens.
20 (Id. at 17.)

21      Two of these employees, plaintiff and Hector Galvan,
22 worked in the student program at Pine Flat Lake.  Both plaintiff
23 and Galvan were Mexican citizens.  Manning believed that the
24 Department of Army regulations required all non-citizen employees
25 to be identified as such in all Department of Defense
26 communications, and that such employees would have to have their
27 access cards modified to display a red stripe.  (Id. at 18, 31-
28 32.)  Manning advised managers on August 22, 2006, that security

1    regulations must be enforced; specifically, that any non-U.S.
2    citizen employees must change their Outlook e-mail identifier and
3    access card to reflect their non-citizenship status.  (See
4    Amended Taylor Decl. Ex. 36 (Pl's Resp. to Req. for Admissions
5    Set One) ¶¶ 51, 58.)  Access cards of non-citizens were to be
6    changed to have a red stripe when before they had a white stripe,
7    and the Outlook identifier was changed to include "Non-US
8    Citizen".  (Pl.'s Index of Exhibits Ex. 9.)  On August 24, 2006,
9    plaintiff's supervisor, Michael LaFrentz, forwarded Manning's e-
10   mail to plaintiff and Galvan and instructed them to comply.
11   (Amended Taylor Decl. Ex. 8-10.)  Non-citizen employees in the
12   Sacramento District also had their citation-issuing authority
13   revoked.  (See Amended Taylor Decl. Ex. 54 (Friedman Depo.) 17-
14   19; id. Ex. 48 (LaFrentz Depo.) 27-28.)  On September 25, 2006,
15   plaintiff's citation authority was revoked and he had to
16   relinquish his badge and citation book.  (Amended Taylor Decl.
17   Ex. 36 (Pl's Resp. to Req. for Admissions Set One) ¶ 65.)

18        On September 27, 2006, plaintiff made contact with the
19   Equal Employment Opportunity Commission and filed his first
20   discrimination complaint on November 2, 2006.  (See Amended
21   Taylor Decl. Ex. 14.).  Plaintiff alleged race, national origin,
22   and disability discrimination and retaliation for the (1) change
23   in his Outlook identifier; (2) change in his access card; (3)
24   revocation of his citation authority; (4) transfer from the SCEP
25   program down to the STEP program on September 25, 2006; (5)
26   stress caused by the situation and subsequent need to request
27   several days sick leave(6); discriminatory jokes he experienced
28   at work related to his ethnic background; (7) assignment to work

4

Christmas due to discrimination or possible retaliation for filing his EEOC complaint; (8) denial of a training opportunity in December 2006; and (9) charging him as AWOL on October 6, 2006. (Amended Taylor Decl. Ex. 14, 21.) Claims 1, 2, and 3 were accepted by the Army's EEO office for investigation, and claims 4-9 were dismissed because they had not previously been brought to the attention of an EEO counselor as required by the regulations. (Amended Taylor Decl. Ex. 21.)

Plaintiff's EEO claim was denied on June 26, 2008. (Amended Taylor Decl. Ex. 33.) The EEOC opinion stated that it was denying plaintiff's claims because classification on citizenship is not actionable, none of the alleged actions were "ultimate employment decisions" subject to Title VII protection, decisions were not based on his race or national origin, no retaliation occurred since the issues raised in the complaint occurred prior to his EEO protected activity, and plaintiff's disability claim arose after the events that gave rise to the action. (Id. Ex. 33.)

On October 9, 2006, plaintiff was scheduled to work at the Fresno Columbus Day Fair and showed-up for work late and left early, for a total of 1.5 hours, without requesting permission in advance and in violation of attendance policies. (Amended Taylor Decl. Ex. 12-13.) LaFrentz talked to plaintiff on October 12, 2006 about complying with his time schedule and his work performance and attitude. (Id. Ex. 13.) Plaintiff submitted a retroactive request for leave for the October 9, 2006 incident, which was denied on October 13, 2006. (Id. Ex. 12.) Plaintiff's reason for seeking leave for the time missed was "due to school

5

1  ending at 1400" and "to catch-up on school work." (Id.)
2  Plaintiff was therefore charged with being Absent Without Leave
3  ("AWOL"). (Id. Ex. 13.)  On October 13, 2006, plaintiff was
4  issued a "Need for Improvement" memorandum which cautioned that
5  the citizenship issue should not interfere with plaintiff
6  fulfilling his job responsibilities.  (Id. Ex. 13.)

7          Plaintiff's next annual review by LaFrentz, covering
8  the period from May 1, 2006 through April 31, 2007, was positive,
9  but not as positive as plaintiff's earlier reviews.  (See
10  (Amended Taylor Decl. Ex. 29.)  Plaintiff took leave on May 6,
11  2007 as a result of stress, and again took leave on July 20, 2007
12  after a meeting with LaFrentz regarding plaintiff's work duties.
13  (See Amended Taylor Decl. Ex. 20.)  In July 2007 plaintiff was
14  agin counseled about leave policies. (Amended Taylor Decl. Ex.
15  20, 22.)

16          On August 6, 2007, plaintiff called LaFrentz five
17  minutes after he was scheduled to appear for work and told
18  LaFrentz he overslept and would be an hour late to work. (Amended
19  Taylor Decl. Ex. 23, 29.)  LaFrentz then called his supervisor,
20  Calvin Foster, to inform him he was inclined to charge plaintiff
21  as AWOL.  (Id. Ex. 23-24.)  Foster then called his supervisor,
22  Jim Sander, and informed him of his phone call with LaFrentz.
23  (Id. Ex. 24.)  When plaintiff showed-up for work, LaFrentz
24  engaged plaintiff in a conversation which became heated.  (Id.
25  Ex. 23, 29.)  Plaintiff walked out of LaFrentz's office during
26  the conversation and prepared a request for sick leave to present
27  to LaFrentz. (Id. Ex. 23, 29.)  LaFrentz called Foster again
28  informing him of the conversation.  While LaFrentz was on the

1   phone, plaintiff re-entered LaFrentz's office and presented a
2   leave slip for sick leave for his remaining shift.  (Id.)
3   LaFrentz told plaintiff to wait until he was finished with his
4   phone conversation, to which plaintiff responded that he was
5   leaving and that LaFrentz had better "hurry up."  (Id. Ex. 23,
6   29.)  Foster requested LaFrentz to put plaintiff on the telephone
7   so Foster could speak with plaintiff, which plaintiff refused.
8   (Id. Ex. 23-24, 29.)  Plaintiff left LaFrentz's office and called
9   him a "jerk" in front of other employees.  (Id. Ex. 23, 29.)
10  Plaintiff then left work without having his leave request
11  approved.  LaFrentz conveyed these events fo Foster, who
12  subsequently conveyed them to Sander.  (Id. Ex. 24.)

13          Foster and Sander decided to place plaintiff on paid
14  administrative leave pending an investigation into the August 6,
15  2007 incident.  (Id. Ex. 24-26.)  LaFrentz subsequently signed a
16  removal letter on August 20, 2007 terminating plaintiff, which
17  was effective August 27, 2007.  (Amended Taylor Decl. Ex. 27-28.)
18   The letter cited attendance-related offenses and "discourtesy in
19  the workplace" as the reasons for plaintiff's termination.  (Id.
20  Ex. 27.)

21          Plaintiff filed his second EEOC complaint of
22  discrimination on October 6, 2007, again pleading discrimination
23  on the basis of race, national origin, and retaliation. (Id. Ex.
24  29.)  Plaintiff alleged race and national origin discrimination
25  and retaliation for (a) the August 6, 2006 AWOL charge; (b) the
26  May 17, 2007 level 3 performance rating; (c) being placed on
27  administrative leave on August 6, 2007; (d) receiving a July 20,
28  2007 call from LaFrentz regarding plaintiff's July 21 and 22

                                7

requests for leave; (e) being asked to sign a leave slip signed by LaFrentz and harassment by him on July 23, 2007; and (f) the August 27, 2007 termination of employment. (Id. Ex. 29, 32.)  On October 24, 2007, the EEOC accepted claims a, c, and f and dismissed claims b, d, and e for failure to bring those claims to the EEOC within forty-five days of their occurrence as required by the regulations. (Id. Ex. 32.)  Plaintiff's complaint was denied on March 19, 2009, because plaintiff filed the instant lawsuit on September 19, 2008. (Id. Ex. 34]; see 29 C.F.R. § 1614.107(a)(3) (dismissing EEO complaints that are the basis of a civil action in federal court involving the complainant, provided 180 days have passed since complainant filed the EEO complaint).

Plaintiff filed the instant lawsuit on September 19, 2008 in the Northern District of California, which merged the two EEO complaints in one federal action. (Docket No. 1.)  The action was transferred to this district on March 13, 2009. (Docket No. 14.)  Plaintiff filed an amended complaint on April 21, 2009. (Docket No. 22.)  Before the court is defendant's motion for summary judgment.[4]

Plaintiff alleges in three causes of action for race and national origin discrimination, disability discrimination, and retaliation that the discriminatory conduct he experienced consisted of: (1) being erroneously classified as a foreign national instead of as a lawful U.S. permanent resident on August

---

[4]    Defendant also filed an amended request for judicial notice asking the court to take judicial notice of pleadings and other documents present in the case file. (Docket No. 66.) Because such documents are matters of public record not reasonably subject to dispute, the court will take judicial notice of the documents.

8

1  22, 2006; (2) being identified as a non-U.S. citizen by his
2  access card that displayed a red stripe instead of a white stripe
3  on October 10, 2006; (3) having his Outlook e-mail identifier
4  changed to include the information that he is a non-citizen on
5  August 23, 2006; (4) having his citation authority removed; (5)
6  being threatened to be removed from the SCEP program; (6) having
7  his performance rating downgraded on May 17, 2007; (7) being
8  charged as AWOL for coming in to work late on August 6, 2007; (8)
9  being placed on administrative leave of August 6, 2007; (9) being
10  terminated on August 27, 2007; (10) defendant's failure to
11  provide reasonable accommodations for his disability; and (11)
12  defendant's failure to put an end to the harassment plaintiff
13  experienced at work.  (See FAC.)

14  II.  Discussion

15          Summary judgment is proper "if the pleadings, the
16  discovery and disclosure materials on file, and any affidavits
17  show that there is no genuine issue as to any material fact and
18  that the movant is entitled to judgment as a matter of law."
19  Fed. R. Civ. P. 56(c).  A material fact is one that could affect
20  the outcome of the suit, and a genuine issue is one that could
21  permit a reasonable jury to enter a verdict in the nonmoving
22  party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
23  248 (1986).  The moving party bears the burden of demonstrating
24  the absence of a genuine issue of material fact.  Id. at 256.  On
25  issues for which the ultimate burden of persuasion at trial lies
26  with the nonmoving party, the moving party bears the initial
27  burden of establishing the absence of a genuine issue of material
28  fact and can satisfy this burden by presenting evidence that

negates an essential element of the nonmoving party's case or by demonstrating that the nonmoving party cannot produce evidence to support an essential element of its claim or defense.  <u>Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party carries its initial burden, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but must go beyond the pleadings and, "by affidavits or as otherwise provided in [Rule 56,] set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986); <u>Valandingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir. 1989).  On those issues for which it will bear the ultimate burden of persuasion at trial, the nonmoving party "must produce evidence to support its claim or defense."  <u>Nissan Fire</u>, 210 F.3d at 1103.

In its inquiry, the court must view any inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  The court also may not engage in credibility determinations or weigh the evidence, for these are jury functions.  <u>Anderson</u>, 477 U.S. at 255.

Claims of race and national-origin discrimination under Title VII are evaluated pursuant to the burden-shifting framework provided in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under the <u>McDonnell Douglas</u> framework, "the burden of production first falls on the plaintiff to make out a prima facie case of discrimination."  <u>Coghlan v. Am. Seafoods Co. LLC</u>, 413

F.3d 1090, 1094 (9th Cir. 2005).  He may do so by showing that
(1) he belongs to a protected class; (2) he performed his job
satisfactorily prior to the disparate treatment; (3) he was
subjected to an adverse employment action; and (4) similarly
situated employees outside the protected class received more
favorable treatment.  Id.; see Raad Fairbanks N. Star Borough
Sch. Dist., 323 F.3d 1185, 1196 (9th Cir. 2003).  If plaintiff
fails to carry his initial burden to establish a prima facie case
of discrimination, summary judgment is appropriate.  If plaintiff
successfully establishes his prima facie case, the "burden of
production, but not persuasion, [] shifts to the employer to
articulate some legitimate, nondiscriminatory reason for the
challenged action."  Chuang v. Univ. of Cal. Davis, 225 F.3d
1115, 1123-24 (9th Cir. 2000) (citing McDonnell Douglas, 411 U.S.
at 802).

          Assuming the employer articulates a legitimate,
nondiscriminatory reason for its actions, plaintiff, in order to
survive summary judgment, bears the burden of supplying evidence
to the court that gives rise to an inference of intentional
discrimination.  See Coghlan, 413 F.3d at 1094 (citing St. Mary's
Honot Ctr. at 507-08.).  At this stage of the analysis, "[t]he
mere existence of a prima facie case, based on the minimum
evidence necessary to raise a McDonnell Douglas presumption, does
not preclude summary judgment" in favor the employer.  See Wallis
v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994).  Rather,
"[i]n response to the defendant's offer of nondiscriminatory
reasons, the plaintiff must produce specific, substantial
evidence of pretext."  Id. "In other words, the plaintiff must

11

1  tender a genuine issue of material fact as to pretext in order to

2  avoid summary judgment." Id.

3       A.   Evidentiary Objections

4            "A trial court can only consider admissible evidence in

5  ruling on a motion for summary judgment." Orr v. Bank of Am., NT

6  & SA, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R. Civ. P.

7  56(e); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181

8  (9th Cir. 1988)).   After receiving defendant's Reply and

9  plaintiff's Opposition to defendant's motion to dismiss, the

10 court determined that there were many evidentiary objections to

11 the evidence supplied by both parties and granted the parties an

12 extension of time to resubmit their briefs an evidence to take

13 into account the evidentiary objections.

14           Despite the court's April 23, 2010 Order (Docket No.

15 62) admonishing the parties that statements of undisputed fact

16 are not evidence subject to the Federal Rules of Evidence,

17 plaintiff filed an amended list of objections to several of

18 defendant's stated undisputed facts rather than to the evidence

19 in support of those statements.   (Docket No. 71.)   To the extent

20 that plaintiff's objections are to the stated undisputed facts

21 themselves as conclusions drawn from the exhibits proffered by

22 defendant, they are inappropriate and are overruled.   Plaintiff's

23 amended list of objections also include several blanket

24 objections to multiple sources of evidence listed in support of a

25 statement of undisputed fact.   This also contravenes the court's

26 April 23, 2010 Order, which required the parties to separately

27 list each evidentiary objection, "specifically identifying the

28 statement objected to in the evidence and its location, citing

                              12

1  the applicable Federal Rule of Evidence, and articulating the

2  objection made therein." (Docket No. 62.)  It is impossible for

3  the court to understand, let alone rule upon, broad blanket

4  objections.  To the extent that plaintiff broadly objects to the

5  various evidence cited in support of the statements of undisputed

6  fact objected to, those objections are also overruled as

7  inappropriate.

8          The remainder of plaintiff's unorganized and confusing

9  objections are on the basis of relevance, hearsay, lack of

10  foundation, lack of personal knowledge, prejudice, improper

11  character evidence, and assuming facts not in evidence.  The

12  court has reminded the parties that on summary judgment, the

13  evidence need not be in a form that is admissible at trial.  <u>See</u>

14  <u>Burch v. Regents of the Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1119

15  (E.D. Cal. 2006) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

16  324 (1986)).  Furthermore, many of these objections are

17  unnecessary when made to evidence presented in support of a

18  motion for summary judgement, as the court is not in danger of

19  prejudice and the summary judgment standard dictates that summary

20  judgment can be granted "only when there is no genuine dispute of

21  <u>material</u> fact.  <u>See</u> <u>Burch</u>, 433 F. Supp. 3d at 1119-20.

22  Plaintiff's objections are therefore overruled.

23      B.  <u>Arias's Declaration</u>

24          "The general rule in the Ninth Circuit is that a party

25  cannot create an issue of fact by an affidavit contradicting his

26  prior deposition testimony." <u>Kennedy v. Allied Mut. Ins. Co.</u>,

27  952 F.2d 262, 266 (9th Cir. 1991).  This is because "if a party

28  who has been examined at length on deposition could raise an

issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id. at 266 (quoting Foster v. Arcata Assocs., Inc., 772 F.2d 1453, 1462 (9th Cir. 1985)).

The "sham affidavit rule" may be invoked only if a district court makes "a factual determination that the contradiction was actually a sham" and "the inconsistency between a party's deposition testimony and subsequent affidavit . . . [is] clear and unambiguous." Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998-99 (9th Cir. 2009) (internal quotations marks, citations omitted). Accordingly, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." Messick v. Horizon Indus., 62 F.3d 1227, 1231 (9th Cir. 1995). Plaintiff submitted a declaration in opposition to defendant's motion for summary judgment (Docket No. 70) that defendant contends portions of which ought to be striken as a sham declaration.

Specifically, defendant contends that plaintiff's representations that he was a "Park Ranger" contradict his prior statements that he was a "student park ranger," and his representations that he was a "permanent citizen" and "mischaracterized as a non-US citizen" contradict his earlier admissions that he was not--and still is not--a United States citizen while he was employed by the Army. The evidence is

14

1  uncontraverted and plaintiff has repeatedly stated that he was

2  always a student employee at Pine Flat Lake.   Any representations

3  that plaintiff was a permanent "Park Ranger" will therefore be

4  ignored by the court in deciding defendant's motion to dismiss.

5  Likewise, the evidence is uncontraverted and plaintiff has

6  repeatedly stated that he was not and is not a United States

7  citizen.   The court will therefore ignore any reference to the

8  fact that plaintiff was a United States citizen in evaluating

9  defendant's motion to dismiss.

10        Defendant also objects to statements in plaintiff's

11  declaration that he "never demonstrated a poor work attitude" and

12  that he remained positive about his job.   The court finds these

13  statements to be merely plaintiff's opinion as to his prior work

14  performance and a minor discrepancy with the prior testimony to

15  which the government compares it.   Plaintiff has repeatedly

16  called attention to his positive reviews and lack of

17  confrontations with LaFrentz or other employees before the

18  incidents that form the basis of this lawsuit.   These statements,

19  therefore, will be considered as evidence in deciding defendant's

20  motion to dismiss.

21        C.   Claims Properly Before the Court

22        In order to maintain a suit alleging employment

23  discrimination against an agency of the United States, a claimant

24  must exhaust his administrative remedies in accordance with

25  published procedures.   See Leorna v. United States Dep't of

26  State, 105 F.3d 548, 550 (9th Cir. 1997) (citing Brown v. General

27  Serv. Admin., 425 U.S. 820, 832 (1976)); 42 U.S.C. § 2000e-16.

28  Federal regulations require that a federal employee raise a

15

discrimination claim with an Equal Employment Opportunity ("EEO") counselor within forty-five days of an adverse employment action. See <u>Leorna</u>, 105 F.3d at 550 (citing 29 C.F.R. § 1614.105(a)). This forty-five day limit acts as a "statute of limitations for filing suit." <u>Johnson v. U.S. Treas. Dep't.</u>, 27 F.3d 415, 416 (9th Cir. 1994).  The EEO may dismiss a complaint or portions thereof for, <u>inter alia</u>, failure to comply with the forty-five day limit, and failure to state a claim.  29 C.F.R. § 1614.107. A partial dismissal of a complaint is reviewable by an EEOC administrative judge on request for a hearing on the entire complaint before the agency issues a final decision, or appealed to the EEOC Office of Federal Operations ("OFO") within thirty days of a final decision on the remaining claims in the complaint. (<u>See, e.g.</u>, Amended Taylor Decl. Ex. 33.)  Any decisions not challenged are waived.  (<u>Id.</u>)

Federal courts lack subject matter jurisdiction over employment discrimination claims that have not been presented and exhausted in the administrative process.  42 U.S.C. § 2000e-16. Plaintiffs bear the burden of showing they have exhausted their administrative remedies and that the federal courts have jurisdiction over their claims.  See <u>McNutt v. Gen. Motors Acceptance Corp. of Ind.</u>, 298 U.S. 178 (1936).

Plaintiff's suit is founded on eleven alleged acts of discrimination, all of which were raised in either plaintiff's first or second complaint to the Army EEO office.  Eight of the acts of discrimination at issue in this case were accepted for review by the Army EEO office and three were rejected.  The fact that the Army EEO office rejected three of the alleged acts of

16

discrimination that plaintiff raises in this suit is not enough
to preclude this court's jurisdiction over claims that stem from
those acts.   All of the claimed incidents of discrimination in
plaintiff's Complaint are therefore properly before the court.

       D.    <u>First Cause of Action for Race and National Origin</u>
            <u>Discrimination</u>

           1.    <u>Actions Alleged in First EEO Complaint</u>

It is not disputed that plaintiff belongs to a
protected class and that prior to the implementation of the new
security measures that plaintiff performed his job
satisfactorily.   Defendant does not argue that the security
measures do not constitute an adverse employment action.
Primarily at issue is whether similarly situated employees
outside of plaintiff's protected class received more favorable
treatment than plaintiff.   The evidence in the record indicates
that Manning e-mailed all front-line managers in the Sacramento
District asking them about non-citizen employees once he became
aware of non-citizen contractors of various nationalities in the
Sacramento District that had access to sensitive information.
LaFrentz apparently responded to Manning's e-mail indicating that
there were two non-U.S. citizen student employees at Pine Flat
Lake, and Manning made the two student employees at Pine Flat
Lake as well as two other non-U.S. citizen employees brought to
his attention comply with updated security measures.

The evidence plaintiff points to in support of the
contention that the changes were the result of unlawful
discrimination is that Manning's e-mails that LaFrentz forwarded
to plaintiff indicated that plaintiff and Galvan's e-mail

17

notifiers and access cards would have to indicate their "Mexican citizenship" and referred to them as "Mexican citizens."[5] (Amended Taylor Decl. Ex. 8-10.)  Plaintiff and Galvan were both Mexican citizens at the time and were the only non-citizen employees at Pine Flat Lake affected by Manning's security policies.  While there is evidence that the security policies were applied to other non-U.S. citizen employees in the Sacramento district, (See (Amended Taylor Decl. Ex. 33, at 4), there remains a material dispute as to whether other non-U.S. citizen employees were directed to have their country of citizenship revealed in the same way that Manning directed that plaintiff's Mexican citizenship be revealed.  Plaintiff has therefore met his prima facie burden.

Defendant has, in turn, articulated a legitimate, nondiscriminatory reason for implementing the challenged security measures.  Namely, the heightened security concerns that arise when non-citizen employees of the Department of Defense have access to sensitive information and computer systems and the related need to identify non-citizen employees.  Plaintiff has, however, provided evidence of pretext sufficient to meet his burden under McDonnell Douglas.  Plaintiff's supervisors knew that he was not a U.S. citizen when he was hired and originally issued his access card, Outlook identifier, and citation authority.  Yet it was not until long after plaintiff began working at Pine Flat Lake that he was required to comply with the regulations.  That Manning stated in his e-mails that plaintiff

---

[5]    In his brief, plaintiff argues that Manning's e-mails refer to plaintiff's "Mexican status."  The court has been unable to locate any such reference.

had to reveal his "Mexican" citizenship rather than simply his status as a non-U.S. citizen is also evidence sufficient to withstand summary judgment that Manning's justification for the security measures could be pretext.

### 2. Actions Alleged in Second EEO Complaint

With respect to plaintiff's alleged race and national origin discrimination claims that stem from his second EEO complaint for being listed as AWOL on August 6, 2006, being placed on administrative leave on August 6, 2007, and being terminated from his position on August 27, 2007, plaintiff has also met his prima facie burden.  Again, it is not disputed that plaintiff is a member of a protected class and that the challenged actions are adverse employment actions.  Plaintiff has also provided evidence in the form of performance reviews and awards that he performed his job in an overall satisfactory manner prior to and after the events at issue occurred sufficient to withstand summary judgment.  At issue is whether others outside of plaintiff's protected class were treated more favorably than plaintiff.

Individuals are similarly situated when they have similar jobs and display similar conduct.  See, e.g., Vasquez v. City of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003); see also Wall v. Nat'l R.R. Passenger Corp., 718 F.2d 906, 909 (9th Cir. 1983) (employees not similarly situated where other employees do not have disciplinary record).  The employees need not be identical; they must simply be similar "in all material respects."  Moran v. Selig, 447 F.3d 748, 755 (9th Cir. 2006).  The evidence in the record suggests that the operational

19

distinction between a student park ranger and permanent park
ranger was minimal.  (Compare Amended Taylor Decl. Ex. 3 with id.
Ex. 5).  For purposes of establishing his prima facie burden, the
court will consider permanent park rangers to be similarly
situated in all material respects to student park rangers.
Plaintiff generally compares himself to Park Rangers Anderson,
Hershey, Thompson, Ehrke, and Coons.  (Amended Taylor Decl. Ex.
38 (Pl's Resp. to Interrogatories Set One) ¶¶ 1-2.)

          With respect to plaintiff's being marked AWOL on August
6, 2006, the evidence indicates that other employees were not
present at their booths or positions but were not punished in a
manner similar to plaintiff.  This is sufficient to satisfy
plaintiff's prima facie burden.  Defendant satisfies its burden
by arguing that its legitimate, non-discriminatory reason to mark
plaintiff AWOL was that plaintiff failed to work the entirety of
his shift as required by attendance policies.  However, evidence
that other employees were not marked AWOL as plaintiff was that
day raises a material dispute of fact with respect to whether the
stated reason for marking plaintiff as AWOL was mere pretext for
a discriminatory motive.

          With respect to plaintiff being put on administrative
leave and eventually being terminated from his position as a
student park ranger, plaintiff compares himself specifically to
Park Rangers Coons and Thompson.  Park Ranger Coons was
terminated by LaFrentz for, inter alia, disobeying orders, lack
of professionalism, and bad judgment.  (Amended Taylor Decl. Ex.
18.)  Plaintiff argues that he should not have been placed on
administrative leave or terminated because Coons was not

terminated until after multiple incidents of bad behavior whereas plaintiff alleges he was terminated only after one incident. Plaintiff also compares himself to Park Ranger Thompson, who in 2005 was late to park ranger training in Jackson, California because he overslept from being intoxicated the night before. (Thompson Dep. (Docket No. 58) 24-25.)  La Frentz was Thompson's team leader at the time, and LaFrentz told Thompson he would have to report Thompson's absence to plaintiff's supervisor when they returned from the retreat.  (Id. at 25.)  Thompson's supervisor decided not to formally punish Thompson for being late to the training.  (Id.)  Plaintiff, however, was counseled and punished for arriving to work late on August 6, 2007, the end result of which was his termination.  These comparisons are sufficient to satisfy plaintiff's prima facie burden that he was treated differently than other park rangers at Pine Flat Lake.

Defendant has articulated a legitimate, non-discriminatory reason for marking plaintiff AWOL, placing him on administrative leave, and eventually terminating him. Specifically, defendant argues that plaintiff violated workplace attendance policies and was insubordinate to management.  The evidence is undisputed that plaintiff had been counseled about attendance policies before the August 6, 2007 incident and that he had previously been marked AWOL.  On August 6, 2007, plaintiff arrived to work one hour late.  Furthermore, plaintiff admits that he called LaFrentz a "jerk," that he told him to "hurry up" off the telephone, that he refused to talk on the phone to Foster when asked, and that he left work without having his leave slip signed.  Plaintiff's comparison to Park Rangers Coons and

Thompson, however, raises a material fact as to whether plaintiff was disciplined and eventually terminated because of a discriminatory motive and is sufficient to withstand a motion for summary judgement.

E.    Second Cause of Action for Retaliation

Under Title VII, an employer may not take any adverse employment action against an employee who has opposed any practice made unlawful by Title VII or made a charge, testified, assisted, or participated in any manner in any investigation, proceeding or hearing under Title VII.  42 U.S.C. § 2000e-3(a). The McDonnell Douglas burden-shifting framework applies to retaliation claims under FEHA and Title VII.  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2003); Flait v. N. Am. Watch Corp., 3 Cal. App. 4th 467, 475-76 (1992).  The employee must establish a prima facie case by showing that the employee engaged in a protected activity, his employer subjected him to adverse employment action, and there is a causal link between the protected activity and the employer's action. Stegall, 350 F.3d at 1065-66; Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1453 (2002).  Then the employer has the burden to articulate a legitimate, non-retaliatory reason for the action taken.  The employee then bears the ultimate burden of demonstrating that any such reason was merely a pretext for a discriminatory motive, and that the retaliation was intentional. Stegall, 350 F.3d at 1066; Akers, 95 Cal. App. 4th at 1453.

The first two prongs necessary to establish a prima facie burden of retaliation do not appear to be in dispute. Plaintiff was charged AWOL, put on administrative leave, and

22

1   ultimately terminated.  Plaintiff made contact with the Equal
2   Employment Opportunity Commission on September 27, 2006, and
3   filed his first discrimination complaint on November 2, 2006.
4   LaFrentz was interviewed by an EEO counselor on November 27,
5   2006, and plaintiff's EEO claim was denied on June 26, 2008.
6   Plaintiff was placed on administrative leave on August 6, 2007
7   and was terminated from his position on August 27, 2007.  Other
8   than the fact that defendant was aware of plaintiff's protected
9   activity, plaintiff does not provide any direct evidence in
10  support of his allegations that the administrative actions taken
11  against him were done to retaliate for filing an EEO complaint.

12          The timing of alleged retaliatory conduct, however, can
13  provide circumstantial evidence of retaliation that is sufficient
14  to create a prima facie case of retaliation.  See Passantino v.
15  Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 507 (9th
16  Cir. 2000) (noting that causation can be inferred from timing
17  alone); see also Miller v. Fairchild Indus., 885 F.2d 498, 505
18  (9th Cir. 1989) (stating that a prima facie case of causation was
19  established when discharges occurred forty-two and fifty-nine
20  days after EEOC hearings); Yartzoff v. Thomas, 809 F.2d 1371,
21  1376 (9th Cir. 1987) (stating that sufficient evidence existed
22  where adverse actions occurred less than three months after
23  complaint filed, two weeks after charge first investigated, and
24  less than two months after investigation ended).  But see
25  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1124-25 (9th Cir.
26  2004) (holding temporal link alone did not establish prima facie
27  case of retaliation where the "events were separated by a year
28  and a half").

1    Plaintiff was placed on administrative leave more than
2    eight months after plaintiff filed his EEO complaint and LaFrentz
3    was interviewed by an EEO counselor.   However, the evidence in
4    the record shows that the Army EEO investigation was still
5    pending at the time of plaintiff's termination--indeed, the
6    investigation was not completed until ten months after plaintiff
7    had been terminated from his position at Pine Flat Lake.   While
8    in some circumstances the gap in time between the filing of an
9    EEO complaint and the adverse employment action can be too great
10   to support an inference of causation based on timing alone, <u>see,</u>
11   <u>e.g.</u>, <u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1035
12   (9th Cir. 2006) (nine month gap between complaint of
13   discrimination and adverse employment action too great to support
14   inference of causation), in this case plaintiff has met his prima
15   facie burden.   Unlike in <u>Cornwell</u>, the evidence in this case is
16   undisputed that plaintiff's supervisor in fact was aware of
17   plaintiff's EEO complaint and participated in the ongoing
18   investigation of plaintiff's claims of discrimination.

19       The court has already explained that defendant has
20   articulated a legitimate, non-discriminatory reason for placing
21   plaintiff on administrative leave and subsequently terminating
22   him.   Plaintiff's comparison to Park Rangers Thompson and Coons
23   nevertheless raises a material dispute as to whether the
24   disciplinary actions taken against him were the result of
25   plaintiff's protected EEO activity, and the court will therefore
26   deny defendant's motion for summary judgement.

27       F.   <u>Third Cause of Action for Disability Discrimination</u>
28            <u>Under the Americans With Disabilities Act</u>

24

1    The federal government may not be sued under the
2    Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-83,
3    because it is specifically excluded from the ADA's definition of
4    "employer."  See 42 U.S.C. §§ 1211(2), 12111(5)(B); Zimmerman v.
5    Oregon Dept. of Justice, 170 F.3d 1169, 1172 (9th Cir. 1999).
6    Rather, the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 et seq.,
7    provides the exclusive judicial remedy for claims based on a
8    federal employee's disability.  See, e.g. McGuinness v. United
9    States Postal Serv., 744 F.2d 1318, 1322-1323 (7th Cir. 1984);
10   Boyd v. U.S. Postal Serv., 752 F.2d 410, 413-414 (9th Cir. 1985).
11   While plaintiff's third cause of action for disability
12   discrimination is brought under the ADA, the court will interpret
13   it as one brought under the Rehabilitation Act.

14        "To establish a prima facie case of disability
15   discrimination, a plaintiff must show (1) he is disabled within
16   the meaning of the statute; (2) he is otherwise qualified for the
17   position; (3) he was adversely treated because of his disability;
18   and (4) he worked for the federal government."  Wilborn v.
19   Ashcroft, 222 F. Supp. 2d 1192, 1207 (S.D. Cal. 2002) (citing
20   Reynolds v. Brock, 815 F.2d 571, 573-74 (9th Cir. 1987)).  If a
21   plaintiff can establish a prima facie case of disability
22   discrimination, "the burden shifts to the defendant to articulate
23   a legitimate, non-discriminatory reason for the employment
24   decision.  The burden then shifts back to the plaintiff to
25   produce evidence sufficient to allow a reasonable factfinder to
26   conclude that defendant's articulated reason is pretextual."  Id.
27   "In other words, [ ] plaintiff 'must tender a genuine issue of
28   material fact as to pretext in order to avoid summary judgment.'"

1    <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 890 (9th Cir. 1983)

2    (quoting <u>Steckl v. Motorola, Inc.</u>, 703 F.2d 392, 393 (9th Cir.

3    1983)).

4            The Americans with Disabilities Act, whose standards of

5    substantive liability are incorporated in the Rehabilitation Act,

6    defines "disability" as: (A) a physical or mental impairment that

7    substantially limits one or more of the major life activities of

8    such individual, (B) a record of such an impairment, or (C) being

9    regarded as having such an impairment.  42 U.S.C. § 12102(1).

10   Plaintiff's third cause of action alleges that he is disabled due

11   to severe mental anxiety and emotional stress.  (FAC ¶ 45.)  The

12   regulations define a physical or mental impairment as:

13           (1) Any physiological disorder, or condition, cosmetic
             disfigurement, or anatomical loss affecting one or more
14           of the following body systems: neurological,
             musculoskeletal, special sense organs, respiratory
15           (including speech organs), cardiovascular, reproductive,
             digestive, genito-urinary, hemic and lymphatic, skin, and
16           endocrine; or

17           (2) Any mental or psychological disorder, such as mental
             retardation, organic brain syndrome, emotional or mental
18           illness, and specific learning disabilities.

19   29 C.F.R. § 1630.2(h).  The regulations further provide that the

20   term "substantially limits" means:

21           (i) Unable to perform a major life activity that the
             average person in the general population can perform; or
22
             (ii) Significantly restricted as to the condition, manner
23           or duration under which an individual can perform a
             particular major life activity as compared to the
24           condition, manner, or duration under which the average
             person in the general population can perform that same
25           major life activity.

26   <u>Id.</u> § 1630.2(j)(1).  The ADA defines "major life activities" as

27   including: "caring for oneself, performing manual tasks, seeing,

28   hearing, eating, sleeping, walking, standing, lifting, bending,

26

speaking, breathing, learning, reading, concentrating, thinking, communicating, and working," as well as including major bodily functions.   42 U.S.C. § 12102(2)(A)-(B).   The regulations further inform that:

> (3) With respect to the major life activity of working-
>
> > (i)  The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(3).   Finally, the regulations provide guidance for determining whether all three elements of "disability"--physical or mental impairment, substantially limiting, major life activity--are met:

> (2)  The following factors should be considered in determining whether an individual is substantially limited in a major life activity:
>
> > (i) The nature and severity of the impairment;
> > (ii) The duration or expected duration of the impairment; and
> > (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

Id. § 1630.2(j)(2).

The evidence in the record indicates that plaintiff sometimes experienced stress at work that caused him to lose the ability to concentrate, request sick leave, and leave his scheduled shifts early.   This is sufficient to survive summary judgment as to whether plaintiff is "disabled" under the statute. Likewise, there is sufficient evidence that plaintiff was otherwise qualified for his position, as he performed his job for

27

years in an exemplary manner and continued to perform satisfactorily even after he began experiencing stress on the job. Similarly, plaintiff has presented evidence sufficient to meet his prima facie burden that he was adversely treated because of his workplace stress. On August 6, 2007, plaintiff left work after a heated exchange with LaFrentz during which he presented a leave slip seeking time off for stress. There is evidence that plaintiff sought to remove himself from LaFrentz's presence, and that as a result of his stress he called LaFrentz a "jerk" and would not talk to Foster on the phone when asked. The disciplinary actions taken against plaintiff are also evidence that defendant failed to make reasonable accommodations for plaintiff's stress disability.

The same evidence explained earlier satisfies defendant's burden to provide a non-discriminatory reason for the disciplinary actions taken against plaintiff. Specifically, that plaintiff was late to work due to sleeping in, that he called LaFrentz a "jerk" and left work without having his leave slip approved. Yet a material issue of fact remains as to whether these actions were taken because of plaintiff's disability. The court will therefore deny defendant's motion for summary judgment with respect to plaintiff's third cause of action.

IT IS THEREFORE ORDERED that defendant's motion for summary judgment be, and the same hereby is, DENIED.

DATED:  June 17, 2010

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

28